Sean GASS

v.

**BEST BUY CO., INC.**

**No. CV 11–01507 SJO (JCGx).**

United States District Court,
C.D. California.

Feb. 13, 2012.

**562**

GeneJ. Stonebarger, Richard D. Lambert, Stonebarger Law, APC, Folsom, CA, James C. Shah, Shepherd Finkelman Miller & Shah LLP, Media, PA, Jeffrey Scott Goldenberg, Todd B. Naylor, Goldenberg Schneider LPA, Cincinnati, OH, Randall B. Aiman–Smith, Aiman–Smith & Marcy, Oakland, CA, Rosemary F. Luzon, Shepherd Finkelman Miller and Shah LLP, San Diego, CA, Thomas D. Mauriello, Mauriello Law Firm APC, San Clemente, CA, for Sean Gass.

Elizabeth Diemphuc Le, Michael A. Geibelson, Robins Kaplan Miller and Ciresi LLP, Los Angeles, CA, for Best Buy Co., Inc.

### PROCEEDINGS (in chambers): ORDER DENYING MOTION TO CERTIFY CLASS [Docket No. 86]

S. JAMES OTERO, District Judge.

This matter is before the Court on Plaintiff Sean Gass's Motion for Class Certification ("Motion"), filed December 5, 2011. Defendant Best Buy Stores, L.P. ("Best Buy" or "Defendant") filed an Opposition ("Opposition"), to which Plaintiff Sean Gass submitted a Reply ("Reply"). The Court found the matter suitable for disposition without oral argument and vacated the hearing set for February 6, 2012. *See* Fed.R.Civ.P. 78(b).

For the following reasons, Plaintiff Sean Gass's Motion is **DENIED.**

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

On February 18, 2011, Plaintiff Sean Gass filed a Complaint in this Court that named Best Buy, Co., Inc., as a defendant. (*See generally* Compl., ECF No. 1.) The Complaint alleged that Sean Gass twice made purchases at Best Buy with a credit card and that during the transactions, Best Buy requested and recorded Plaintiff's ZIP code information. (Compl. ¶¶ 8–10.) Based on this alleged conduct, the Complaint stated causes of action for violations of California Civil Code section 1747.08 (the Song–Beverly Credit Card Act) and California's Unfair Competition Law. (*See generally* Compl.) Plaintiff Sean Gass sought to represent a class of plaintiffs comprised of "All individuals who made one or more purchases from a Best Buy store in California with a credit card and had their ZIP code recorded by Best Buy during the transaction." (Compl. ¶ 12.)

After Plaintiff Sean Gass filed his Complaint, a number of other plaintiffs also filed putative class action lawsuits against Best Buy claiming violations of the Song–Beverly Credit Card Act. *See Roshann Reese v. Best Buy Co., Inc., et al.,* No. 11–CIV–02552; *Jason Zelis v. Best Buy Co., Inc.,* No. 11–CIV–05915; *Versil Milton v. Best Buy Co., Inc.,* No. 11–CIV–06913; *Jennifer Bennet v. Best Buy Co., Inc.,* No. 11–CIV–06953; and *Jared Wood v. Best Buy Co., Inc.,* No. 11–CIV–07101.[1] As all of these cases sought to represent overlapping classes of plaintiffs who seek to recover for similar if not identical injuries, Best Buy noticed these cases as related. (*See, e.g.,* Not. of Related Case, May 2, 2011, ECF No. 24.) All of the cases were transferred to this Court.

The Court held a status conference for all the related cases on September 12, 2011. On the Court's own motion, the Court ordered all of the cases consolidated for all purposes except trial. (Sept. 12, 2011 Order, ECF No. 67.) The Court designated Case No. 11–CIV–01570 (*Sean Gass v. Best Buy Co., Inc.*) as the lead case. (Sept. 12, 2011 Order.) At a status conference on October 11, 2011, the Court ordered the plaintiffs to file a consolidated amended complaint by October 18, 2011 and to file a motion for class certification by December 5, 2011. (Oct. 11, 2011 Order, ECF No. 74.)

The plaintiffs filed their Consolidated Complaint on October 18, 2011. The Consolidated Complaint includes Sean Gass, Jason Zelis, Versil Milton, Jennifer Bennett, and Jared Wood as plaintiffs (collectively, "Plaintiffs"). Plaintiffs now name Best Buy Stores, L.P., as Defendant.[2] The Consolidated Complaint states a single cause of action for violations of the Song–Beverly Credit Card Act. (*See* Consolidated Compl. ¶¶ 30–33, ECF No. 75.) The Consolidated Complaint also indicates Plaintiffs' desire to represent a class of plaintiffs comprised of "all persons in California from whom Defendant requested and recorded personal identification information in conjunction with a credit card transaction during the period of time beginning February 16, 2010 and continuing through the date of trial." (Consolidated Compl. ¶ 24.) The Consolidated Complaint excludes from the class "specific transactions that involved shipping, delivery, servicing, installation or for a special order." (Consolidated Compl. ¶ 24.) [3]

Plaintiffs filed the instant Motion for class certification on December 5, 2011. In their Motion, Plaintiffs seek to certify one class and one subclass, defined as follows:

> *Class:* All persons from whom Defendant requested and recorded personal identification information in conjunction with a

---

1. Plaintiff Jared Wood filed his original Complaint in Contra Costa County Superior Court on February 16, 2011. Best Buy removed the case to federal court on April 19, 2011.

2. The Consolidated Complaint also includes Doe defendants.

3. The Consolidated Complaint also excludes from the class "Defendant, its corporate parents, subsidiaries and affiliates, officers and directors, any entity in which Defendant has a controlling interest, and the legal representatives, successors or assigns of any such excluded persons or entities, as well as the Court and the attorneys for any of the parties in this action." (Consolidated Compl. ¶ 24.)

credit card transaction in California from February 16, 2010 through the date of commencement of trial in this action.

*Subclass:* All persons from whom Defendant requested and recorded personal identification information relating to the pre-enrollment of the person in Defendant's Reward Zone program in conjunction with a credit card transaction in California from February 16, 2010 through the date of commencement of trial in this action.

(Mot. 1.) Plaintiffs indicate that they will exclude from the class and the subclass "persons whose personal identification information is required for a special purpose incidental but related to the individual credit card transaction, including, but not limited to, information relating to shipping, delivery, servicing, or installation of the purchased merchandise, or for special orders." (Mot. 1.)[4] Defendant opposes the certification of both the class and the subclass. (*See generally* Opp'n.)

## II. *DISCUSSION*

### A. *The Song–Beverly Credit Card Act*

The Song–Beverly Credit Card Act (the "Act") is a consumer protection statute. *See Pineda v. Williams–Sonoma Stores, Inc.*, 51 Cal.4th 524, 527, 120 Cal.Rptr.3d 531, 246 P.3d 612 (2011). Among its provisions, the Act makes it a violation for a business to "request, or require as a condition to accepting [a] credit card as payment [ ] for goods or services, the cardholder to provide personal identification information, which the [business] causes to be written, or otherwise records (4)27" Cal. Civ.Code § 1747.08. The Act specifies that "personal identification information" (hereinafter, "PII") includes the cardholder's address and telephone number. Cal. Civ.Code § 1747.08(b).

The Act provides certain exceptions. For instance, businesses are permitted to request and record PII "[i]f personal identification information is required for a special purpose

incidental but related to the individual credit card transaction, including but not limited to, information relating to shipping, delivery, servicing, or installation of the purchased merchandise, or for special orders." Cal. Civ.Code § 1747.08(c)(4).

The California Legislature passed the Act to address two important privacy concerns. First, corporations were needlessly storing consumer PII and using it for their own marketing purposes or selling the information to other marketers. *See Florez v. Linens 'N Things, Inc.*, 108 Cal.App.4th 447, 452, 133 Cal.Rptr.2d 465 (2003). Second, store clerks who obtained customers' PII engaged in acts of harassment and violence. *Id.* at 452, 133 Cal.Rptr.2d 465. The Act provides for statutory civil penalties not to exceed $250 for the first violation and $1000 for each subsequent violation. Cal. Civ.Code § 1747.08(e).

As originally drafted, the Act only prohibited businesses from **requiring** personal information as a condition of a credit card payment. Cal. Civ.Code § 1747.8 (1990) (amended 1991). Amendments enacted in 1991 added the word "request" to the statute, making it illegal to either **"request, or** require" personal information as a condition for a credit card transaction, and then to record that information. Cal. Civ.Code § 1747.8 (1991) (amended 1995) (emphasis added); *see Florez*, 108 Cal.App.4th at 450–51, 133 Cal.Rptr.2d 465 (explaining history of the Act, as currently codified at Cal. Civ.Code § 1747.08.)

In 2008, a California appellate court held that for the purposes of the Act, "personal identification information" did not include ZIP codes. *Party City Corp. v. Superior Court*, 169 Cal.App.4th 497, 519–20, 86 Cal.Rptr.3d 721 (2008). The California Supreme Court rejected that holding in *Pineda v. Williams–Sonoma Stores, Inc.*, 51 Cal.4th 524, 120 Cal.Rptr.3d 531, 246 P.3d 612 (2011), concluding that ZIP codes are "personal identification information" under the Act. This decision was handed down on February 10, 2011.

---

4. Plaintiffs also indicate that they will exclude from the class and the subclass "the officers and directors of Defendant and of its corporate parents, subsidiaries and affiliates, or any entity in which Defendant has a controlling interest, and the legal representatives, successors or assigns of any such excluded persons or entities, and the Court to which this matter is assigned." (Mot. 1.)

The *Pineda* decision spurred the individual lawsuits that have now been consolidated into this case. Plaintiff Jared Wood filed his original Complaint on February 15, 2011. Plaintiff Sean Gass filed his original Complaint on February 18, 2011. The other plaintiffs' original complaints were filed shortly thereafter. Similar lawsuits have been filed against a number of other retailers.

The Consolidated Complaint alleges that each named plaintiff: (1) purchased merchandise at one of Defendant's California stores more recently than February 16, 2010; (2) was asked for PII by the clerk who attended to the transaction at the point of sale; (3) provided PII to the clerk in response to the clerk's request; and (4) had their PII recorded by the clerk into Defendant's electronic database at the point of sale. (Consolidated Compl. ¶¶ 8–12.)

### B. *Best Buy's Point–of–Sale Procedures*

Plaintiffs allege that during the relevant time period, there were at least three scenarios in which Defendant improperly requested (and in some cases, continues to request) its customers' PII in conjunction with credit card transactions, each of which Plaintiffs allege constitutes a violation of the Act. (Mot. 7.) This section explains Best Buy's Point–of–Sale procedures, which do not appear to be in dispute.

### 1. *"Reward Zone" Pre–Enrollment*

Best Buy maintains an optional rewards program for its customers called "Reward Zone." Carol Gustafson, an employee of Best Buy Enterprise Services, Inc., describes the Reward Zone as follows:

> Best Buy Reward Zone is Best Buy's customer loyalty program through which customers earn Reward Zone points for eligible purchases at Best Buy retail stores, BestBuy.com, Best Buy's Reward Zone business partners, and the RZ Online Mall. Reward Zone points are earned on eligible purchases regardless of the method of payment, i.e. credit card, debit card, cash, or check; however, some promotions offer opportunities for more points to be earned if a particular method of payment is used,

such as a Best Buy MasterCard. After specified point thresholds are reached, reward certificates are issued. Reward Zone points can also be redeemed for reward certificates to be used for discounts off future purchases. Reward Zone members also receive special promotional offers for their purchases, such as offers for discounts on travel.

(Decl. of Carol Gustafson in Supp. of Opp'n to Mot. ("Gustafson Decl.") ¶ 2, ECF No. 108.) The Gustafson Declaration also explains a number of other benefits that members of Best Buy's Reward Zone program receive, including certificates for $5 discounts (*id.* ¶ 6) and access to member-only offers such as product pre-orders, pre-sale concert tickets, events, sweepstakes, and other special offers (*id.* ¶ 7). Enrollment in the Best Buy Reward Zone program is optional. (*See* Decl. of Lauren Wallen in Supp. of Opp'n to Mot. ("Wallen Decl.") ¶¶ 8–12, ECF No. 103.)

Best Buy's employees who operate the point-of-sale computer systems are trained to operate the system in accordance with Best Buy's standard operating procedures. (Wallen Decl. ¶¶ 7–8.) According to those procedures, when a customer brings merchandise to a Best Buy cashier to purchase the items, the cashier first inquires whether the customer is a member of the Reward Zone program. (Wallen Decl. ¶ 9.) If the customer states that he is not a member of the Reward Zone, the cashier will ask the customer if he wishes to join the Reward Zone. (Wallen Decl. ¶¶ 9, 11–12.) If the customer indicates that he would like to join the Reward Zone, the cashier will scan and give the customer a card with a Reward Zone membership number. (Wallen Decl. ¶ 11.) The computer will then prompt the cashier to request that the customer provide his first and last name, postal address including ZIP code, telephone number, and e-mail address. (Wallen Decl. ¶ 11.) Best Buy obtains this personal identification information so that it can set up the Reward Zone account and ensure that the Reward Zone points for the first and subsequent transactions are properly credited to the customer's account. (Wallen Decl. ¶ 12.) Customer information that is provided for the purpose of enrolling in the Reward Zone

program is stored in Best Buy's "Enterprise Customer" database. (Wallen Decl. ¶¶ 5, 10.)

If the customer is not a member of the Reward Zone and does not wish to enroll, Best Buy does not request or require the customer to provide any PII. (Wallen Decl. ¶ 12.)

Once a customer signs up for the Reward Zone at the point of sale, an e-mail is sent to the customer notifying the customer of the need and procedure to activate the Reward Zone account online. (Gustafson Decl. ¶ 4.) Thus, simply signing up for the Reward Zone account in the store does not complete the enrollment process. The customer must follow the instructions in the subsequent e-mail to finalize the enrollment.

Plaintiffs assert that the process just described-wherein Best Buy pre-enrolls customers into the Reward Zone program and then sends them an e-mail to finalize the enrollment-constitutes a violation of the Act and subjects Defendant to liability. (Mot. 7-9.)

### 2. *"Reward Zone" Membership Look–Up*

As explained above, when a customer brings merchandise to a cashier for purchase, the cashier will first inquire whether the customer is a member of the Reward Zone. (Wallen Decl. ¶ 9.) If the customer indicates that he is a member of the Reward Zone, the cashier will ask for the Reward Zone membership card; if the customer has his membership card, the cashier scans the bar code on the card (or the key fob). (Wallen Decl. ¶ 10.) This will connect the point-of-sale computer system to the Enterprise Customer database. (*Id.*) The purchases from this transaction will be credited to the customer's Reward Zone account. If the customer has his membership card and the stored information is complete and correct, the cashier will not request any PII from the customer. (*Id.*)

If, however, the customer indicates that he is a member of the Reward Zone but does not have his membership card at the time of the transaction, the point-of-sale system will prompt the cashier to enter information about the customer in order to find the customer's Reward Zone member number in the Enterprise Customer database. (*Id.*) The information that the customer provides is used only to locate and connect to the customer information already stored in the Enterprise Customer database. (*Id.*) The information used to look up a Reward Zone member is not recorded. (*Id.*) If the information provided matches an entry in the Enterprise Customer database and a Reward Zone account is located, the cashier will ask the customer for additional information to verify his account. (*Id.*) Best Buy does this to ensure that the Reward Zone points for the transaction are credited to the correct customer's account. (*Id.*) If the customer's information stored in the Enterprise Customer database is no longer accurate, the cashier may request PII from the customer to update the account information. (*Id.*)

Plaintiffs assert that the process just described-wherein Best Buy asks for PII in order to look up a customer's Reward Zone account if the customer indicates he is enrolled in the Reward Zone but does not have his membership card-constitutes a violation of the Act and subjects Defendant to liability. (Mot. 7-9.)

### 3. *Hand–Keyed Transactions*

Best Buy accepts a number of methods of payment, including cash, credit card, gift card, and Reward Zone certificate. (Wallen Decl. ¶ 13.) If the customer chooses to pay by credit card, the point-of-sale process includes an attempt to swipe the credit card. (*Id.*) So long as the credit card successfully swipes, Best Buy's policy does not involve asking the customer for any PII. (*Id.*) If the credit card fails to successfully swipe and if the transaction was for more than $100, then the cashier will hand-key the credit card information. (*Id.*)

In this situation—if the credit card does not successfully swipe and the transaction is more than $100—the point-of-sale system formerly prompted the cashier to request the customer's phone number. (Wallen Decl. ¶ 13; Decl. of Gene Stonebarger in Supp. of Mot. ("Stonebarger Decl.") Ex. C at 5 (Dep. Tr. of Jared Prom).) The cashier would then use the customer's phone number to attempt

to pull up the customer's information from Best Buy's records. (Stonebarger Decl. Ex. C at 5.) If Best Buy had this customer's information in its records, the cashier would ask the customer to confirm his ZIP code and then use the ZIP code it had on file for the customer as part of the authorization process for the credit card transaction. (Stonebarger Decl. Ex. C at 5, 7; Ex. K at 7–12; Ex. L.) If Best Buy did not already have the customer's ZIP code on file, the cashier would request the customer's ZIP code and use it as part of the authorization process for the credit card transaction. (Stonebarger Decl. Ex. C at 5, 7; Ex. K at 7–12; Ex. L.) Best Buy asserts that this information was gathered for the purpose of detecting and preventing credit card fraud. (Wallen Decl. ¶ 13.)

Defendant presents evidence that it ceased this practice on February 15, 2011, in response to the *Pineda* decision from the California Supreme Court. (Stonebarger Decl. Ex C. at 12, 19.) Plaintiffs assert that the process just described-wherein Best Buy asks for PII from its customers

if a credit card fails to swipe and the amount of the transaction is greater than $100–constitutes a violation of the Act and subjects Defendant to liability. (Mot. 7–9.)

#### 4. *Other Requests for Personal Identification Information*

It appears that there are other scenarios in which Best Buy requests and records its customers' PII in conjunction with credit card transactions. For instance, Best Buy might request and record a customer's address to schedule a shipment of merchandise, to process a return of merchandise, to sign the customer up for the Geek Squad Black Tie Protection Plan, or to process a customer's application for a Best Buy Credit Card. (Opp'n 8.) Plaintiffs' briefing does not discuss whether their position is that these transactions constitute violations of the Act. (*See generally* Mot.; Reply.)[5] Although Plain-

tiffs have not necessarily conceded that the three scenarios described above constitute the only instances of Best Buy requesting PII that would subject it to liability, the briefing is focused on these three enumerated scenarios.

#### C. *Legal Standard for Class Certification*

Federal Rule of Civil Procedure 23(a) provides that a class action is only appropriate if four prerequisites are met: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). Even if all of these prerequisites—numerosity, commonality, typicality, and adequacy of representation—are satisfied, the court must then determine whether the class action is maintainable under Rule 23(b). Rule 23(b)(3), which Plaintiffs argue is applicable here (Mot. 1, 18–23), permits the maintenance of a class action if "the questions of law or fact common to the class members **predominate** over any questions affecting only individual class members, and [ ] a class action is **superior** to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3) (emphases added).

When considering whether a class action is superior to other available methods, courts are instructed to consider the four factors laid out in Rule 23(b)(3):

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

---

**5.** Perhaps Plaintiffs believe that requests for PII in these scenarios would fit into the following exception to the Act: the Act provides that its prohibition on recording PII does not apply "[i]f personal identification information is required for a special purpose incidental but related to the

individual credit card transaction, including, but not limited to, information relating to shipping, delivery, servicing, or installation of the purchased merchandise, or for special orders." Cal. Civ.Code § 1747.08(c) (4).

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed.R.Civ.P. 23(b)(3).

 A party seeking to certify a class may not merely rest on her pleadings. Rather, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal–Mart Stores, Inc. v. Dukes,* —— U.S. ——, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011). "[A]ctual, not presumed conformance with Rule 23(a) remains ... indispensable." *Gen. Tel. Co. of SW v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). The trial court is expected to engage in a "rigorous analysis" to determine if the prerequisites of Rule 23(a) have been satisfied. *Dukes,* 131 S.Ct. at 2551 (quoting *Falcon,* 457 U.S. at 161, 102 S.Ct. 2364). This rigorous analysis will often "overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Dukes,* 131 S.Ct. at 2551.

### D. *Violations of the Song–Beverly Credit Card Act*

Plaintiffs and Defendant disagree on what conduct constitutes a violation of the Act. In order to determine if maintenance of a class action in this case is appropriate, the Court must first resolve this antecedent dispute. Defendant argues that the definitions of both the class and the subclass, as provided by Plaintiffs, are overbroad, as they include within their ambit individuals who have suffered no violation of the Act. (Opp'n 7–9.) Plaintiffs' proposed class would include individuals who provided their PII to Best Buy as part of either the **Reward Zone pre-enrollment process** or the **Reward Zone membership look-up process.** Plaintiffs believe these processes constitute violations of the Act, and therefore their inclusion in the proposed class does not present an over-

breadth problem. (Mot. 7–9.) Defendant argues that these processes do not constitute a violation of the Act, and a class definition that includes these transactions is fatally overbroad. (Opp'n 7–9.) The proposed class would also include individuals from whom Best Buy requested PII as part of the **hand-keyed transaction verification process.** Plaintiffs believe this process constitutes a violation of the Act (Mot. 7–9); in the briefing on this Motion, Defendant does not argue that the hand-keyed transaction verification is not a violation of the Act (*see generally* Opp'n).[6]

The Court cannot certify a class that includes both individuals who have suffered a violation of the Act and individuals who have not suffered any violation. Thus, determining whether the disputed conduct constitutes a violation of the Act is a necessary precursor to the Court's determination of whether the proposed class and subclass are overbroad.

#### 1. *The Reward Zone Pre-Enrollment Process*

 When embarking on statutory interpretation, the Court should always begin with an analysis of the statutory language; if the statutory language is clear and unambiguous, the Court will apply it according to its terms. *Florez v. Linens 'N Things, Inc.,* 108 Cal. App.4th 447, 451, 133 Cal.Rptr.2d 465 (2003) (citing *People v. Jones,* 5 Cal.4th 1142, 1146, 22 Cal.Rptr.2d 753, 857 P.2d 1163 (1993)).

The relevant language from the statute is as follows:

(a) Except as provided in subdivision (c), no [business] that accepts credit cards for the transaction of business shall do any of the following:

...

(2) Request, or require as a condition to accepting the credit card as payment [ ] for goods or services, the cardholder to provide personal identification information, which the [business] accepting the credit card writes, causes to be written, or otherwise records

---

6. Defendant does argue that class certification of a class limited to those individuals who were asked for PII as part of the hand-keyed transac-

tion verification process is improper for other reasons.

upon the credit card transaction form or otherwise.

. . .

(b) For purposes of this section "personal identification information," means information concerning the cardholder, other than information set forth on the credit card, and including, but not limited to, the cardholder's address and telephone number.

(c) Subdivision (a) does not apply in the following instances:

. . .

(4) If personal identification information is required for a special purpose incidental but related to the individual credit card transaction, including, but not limited to, information relating to shipping, delivery, servicing, or installation of the purchased merchandise, or for special orders.

Cal. Civ.Code § 1747.08. The parties dispute whether the phrase "as a condition to accepting the credit card as payment" in subsection (a)(2) applies to the word "request" or whether it only applies to the word "require." Plaintiffs allege that the phrase only applies to the word "require." (Mot. 2.) Thus, according to Plaintiffs, a violation of the Act occurs in either of two scenarios: (1) when a retailer **requests PII** and the records it; or (2) when a retailer **requires PII as a condition to accepting a credit card as payment** and records it. (Mot. 2.)

The alternative view is that both "request" and "require" are subject to the clause that follows. Following such a construction, a violation of the Act would occur in either of two scenarios: (1) when a retailer **requests PII as a condition to accepting a credit card as payment** and records it; or (2) when a retailer **requires PII as a condition to accepting a credit card as payment** and records it.

This Court is not the first to confront this issue. In *Florez,* 108 Cal.App.4th at 450–53, 133 Cal.Rptr.2d 465, a California appellate court broached the same dispute. In *Florez,* the defendant retailer had a practice of requesting and recording customers' telephone numbers during the check-out process. *Id.*

at 449, 452–53, 133 Cal.Rptr.2d 465. However, the *Florez* defendant argued that it did nothing during the check-out process to suggest to the customer that providing a telephone number was a **condition** of using a credit card. *Id.* at 452–53, 133 Cal.Rptr.2d 465. The defendant argued that because it asked for the telephone information before the customer even indicated which method of payment he or she intended to use (cash, credit, etc.), there was no link between the request for the telephone number and the use of the credit card. *Id.* at 450, 452–53, 133 Cal.Rptr.2d 465 ("[Defendant] responds it may request personal identification information *before* a customer announces his or her preferred method of payment, and no authority prevents a retailer from assembling a database of personal customer information . . . if the customer knowingly and voluntarily supplies it").

The *Florez* court described the issue before it as follows:

The key issue, as the parties see it, is the effect of the 1991 amendment adding the word "request" to the statute. [Defendant] argues the legislative history confirms the phrase "as a condition to accepting the credit card" modifies the word "request." [Plaintiff], on the other hand [argues that] . . . a retailer's "request" is prohibited even if the customer responds on a voluntary basis.

*Id.* at 451, 133 Cal.Rptr.2d 465. The *Florez* court, however, did not come down firmly in favor of either side's interpretation of the statute. Although the *Florez* court ruled in favor of the plaintiff (and reversed the trial court's demurrer), the appellate court crafted a middle ground with respect to the statutory interpretation.

Following the two extreme arguments to their natural outcomes illustrates why a middle-ground interpretation is necessary. If, as the plaintiffs in both *Florez* and the instant case urge, the phrase "as a condition to accepting the credit card" does **not** apply to the word request, then **nothing ties a violation of the Act to a credit card transaction at all.** Accepting Plaintiffs' interpretation, the statute would read, in pertinent part, as follows:

> Except as provided in subdivision (c), no [business] that accepts credit cards for the transaction of business shall do any of the following: ... Request [ ] the cardholder to provide personal identification information, which the [business] accepting the credit card [ ] records ....

Such a construction would mean that no business in California that accepts credit cards as payment can maintain a mailing list. The *Florez* court explicitly held that this was not the proper reading of the Act. "We note that nothing prevents a retailer from soliciting a consumer's address and telephone number for a store's mailing list, if that information is provided voluntarily." *Florez*, 108 Cal. App.4th at 451, 133 Cal.Rptr.2d 465.

However, the *Florez* court also held that the defendant's interpretation of the statute, which would have permitted a broad "voluntariness" exception to the Act, was also improper. The *Florez* defendant believed that by **requesting** PII, but not **explicitly** conditioning the credit card transaction on the customer's willingness to provide the PII, it could avoid liability. *Id.* at 450, 452–53, 133 Cal.Rptr.2d 465. Accepting this construction would provide a loophole that would swallow the rule, as a retailer could avoid liability simply by phrasing the request as a question (e.g., "Can I have your telephone number?") rather than a demand (e.g., "I'll need your telephone number."), or by "rushing to obtain the information before the customer makes his or her payment preference known." *Id.* at 453, 133 Cal.Rptr.2d 465. The *Florez* court held that such a construction would be an "absurd conclusion" that would "completely undermine the purpose of the statute." *Id.*

■ The middle ground that the *Florez* court carved out focused on the **customer's perception.** If the customer reasonably perceives the request for PII as a condition of completing the credit card transaction, the Act has been violated. "[T]he retailer's unannounced subjective intent is irrelevant. What does matter is whether a consumer would *perceive* the store's 'request' for information as a 'condition' of the use of a credit card." *Id.* at 451, 133 Cal.Rptr.2d 465. The *Florez* court held that the defendant's practice of requesting customers' telephone numbers when they approached the cashier (before the customer indicated his or her method of payment) constituted a violation of the Act, as a consumer could reasonably perceive this request as a condition of completing the credit card transaction, even if that was not actually the case (i.e., even if the cashier was willing to process the credit card transaction if the customer declined to offer his or her telephone number).

Thus, the crucial difference between *Florez* and the Reward Zone pre-enrollment process in the instant case is how the customer perceives the request for PII. In *Florez*, the cashier asked for the customer's telephone number as soon as the transaction began. Consumers could reasonably perceive this request as a request that must be granted in order to proceed with the purchase. The Reward Zone pre-enrollment process involves a cashier initially asking the customer if he or she is a member of the Best Buy Reward Zone. (Wallen Decl. ¶ 9.) If the customer answers in the negative, the cashier asks if the customer wishes to join the Reward Zone. (Wallen Decl. ¶¶ 9, 11–12.) Only if the customer answers in the affirmative does the cashier request the customer's PII. (Wallen Decl. ¶¶ 11–12.) A reasonable consumer would understand that a request for PII made in this manner is not a condition for the credit card transaction, but rather is a condition for joining the Reward Zone.

For purposes of clarity, the Court will lay out a continuum of business practices and analyze at what point a retailer commits a violation of the Act. This continuum proceeds from the most obvious violations of the Act to less obvious violations of the Act to conduct that does not violate the Act.

1) A business requires a customer to provide PII as a condition of completing a credit card transaction. An example of this would be the cashier saying to the customer: "Please give me your ZIP code so that I can process your credit card." This conduct is prohibited by the explicit terms of even the 1990 version of the Act.

2) A business requests a customer's PII as a condition of completing a credit card transaction. An example of this would be the cashier saying to the customer: "Can I have your ZIP code?" and refusing to process the credit card unless the ZIP code is given. This conduct is prohibited by even the most narrow reading of the 1991 amendment to the Act.

3) A business requests a customer's PII during a credit card transaction, and although the business is willing to process the credit card transaction even if the customer declines to provide his PII, the request is made in such a way that the customer could perceive the request for PII as a condition of completing a credit card transaction. This was the scenario presented in *Florez*. The defendant argued that receiving the customer's telephone number was not actually a condition of the credit card transaction. *Florez*, 108 Cal. App.4th at 453, 133 Cal.Rptr.2d 465. But the court found that because the customer was asked for his or her telephone number upon approaching the cashier, a customer might perceive the request as a condition for completing the credit card transaction. *Id.* at 450–51, 133 Cal.Rptr.2d 465. As *Florez* held, this is a violation of the Act. *Id.* at 452–53, 133 Cal.Rptr.2d 465.

4) A business requests a customer's PII during a credit card transaction, but does so in a manner such that no reasonable customer could perceive the request as a condition for the business accepting the credit card. This is the situation presented by the Reward Zone pre-enrollment process in this case. If the request for PII is preceded by the cashier inquiring whether the customer wishes to sign up for Best Buy's Reward Zone, no reasonable customer would construe the subsequent request for PII as a condition for the credit card transaction. A reasonable customer would understand that the PII is being given for the purpose of enrolling in the Reward Zone, not for the purpose of completing the credit card transaction. This is not a violation of the Act.

5) The business requests a customer's PII in a situation unrelated to a credit card transaction. An example of this would be a salesperson on the floor of a retail store who circulates among customers and asks them if they wish to provide their street address to join the store's mailing list. Accepting Plaintiffs' construction of the Act, even this is a violation. The *Florez* court specifically held that this is not a violation, and that businesses are permitted to request PII for the purpose of maintaining a mailing list. *Florez*, 108 Cal.App.4th at 451, 133 Cal.Rptr.2d 465.

Plaintiffs strongly urge that *Florez* and the California Supreme Court's decision in *Pineda v. Williams–Sonoma Stores, Inc.*, 51 Cal.4th 524, 120 Cal.Rptr.3d 531, 246 P.3d 612 (2011), contradict the conclusions the Court has just drawn. (Mot. 2–5.) According to Plaintiffs, *Florez* and *Pineda* explicitly held that there is **no** voluntariness exception to the Act, and the Act has been violated even if the customer is perfectly aware that: (1) providing his PII is optional; (2) the cashier is willing to process the credit card transaction if the PII is not provided; **and** (3) the cashier is requesting the PII for a purpose other than to complete the credit card transaction. (Mot. 2–5.) Because neither *Pineda* nor *Florez* had such facts, this cannot possibly have been the holding of those cases.

In *Pineda*, the plaintiff's explicit allegation was that she believed that providing her ZIP code was a **condition** of completing the credit card transaction. *Pineda*, 51 Cal.4th at 527, 120 Cal.Rptr.3d 531, 246 P.3d 612 ("Plaintiff alleges that while she was paying for a purchase with her credit card in one of defendant's stores, the cashier asked plaintiff for her ZIP code. **Believing it necessary to complete the transaction,** plaintiff provided the requested information and the cashier recorded it." (emphasis added)). Similarly, in *Florez*, the plaintiff explicitly alleged that she believed providing her telephone number was a **condition** of completing the credit card transaction. *Florez*, 108 Cal.App.4th at

449, 133 Cal.Rptr.2d 465 ("According to [plaintiff's] allegations, [plaintiff] visited [one of defendant's] store[s] on July 16, 2001, and brought various items to the cashier for purchase. Pursuant to the store's 'Telephone Capture Policy,' the cashier asked [plaintiff] for her telephone number. [Plaintiff] obliged, **believing it was required to complete the transaction,** and the cashier typed the information into the electronic cash register." (emphasis added)).

Neither the *Pineda* court nor the *Florez* court confronted a scenario where a consumer, perfectly aware that providing his PII was optional, sought to sue for violations of the Act. The Court will therefore not read into the holding of either case a rule that a consumer who is perfectly aware that his provision of PII is voluntary and not needed to complete a credit card transaction can nevertheless sue for violations of the Act. To the extent *Pineda* and *Florez* discuss a "voluntariness" exception, they do so from the point of view of the business: a business may not claim that it was asking for a customer's PII for an **undisclosed purpose** other than to complete the credit card transaction, and therefore the consumer's provision of that PII upon the cashier's request must have been voluntary. *Florez* draws this distinction explicitly: "[T]he retailer's unannounced subjective intent is irrelevant. What does matter is whether a consumer would *perceive* the store's 'request' for information as a 'condition' of the use of a credit card." *Florez*, 108 Cal.App.4th at 451, 133 Cal.Rptr.2d 465. Both *Pineda* and *Florez* involved factual scenarios that would fit into scenario (3) discussed above.

▮ Thus, the Court goes through this analysis to decide the necessary issue of whether there is a distinction between scenario (3) and scenario (4) listed above. The Court concludes that there is a relevant distinction, and that where no reasonable customer could perceive the request for PII as a condition for the credit card transaction, the Act has not been violated. It cannot be the case that even where a cashier falls over himself to inform the customer that his provision of PII is optional and not required to complete the credit card transaction, that a request for PII still violates the Act. The Court further finds that where a cashier first asks a customer if he wants to enroll in a rewards program, the customer responds in the affirmative, and **then and only then** does the cashier request PII, no reasonable customer could perceive this request for PII as a condition for completing the credit card transaction. Thus, the Court finds that the Reward Zone pre-enrollment process, as described in Best Buy's procedures, does not violate the Act.[7]

### 2. *The Reward Zone Membership Look–Up Process*

▮ Applying the same customer-perception test to the Reward Zone membership look-up process, it is clear that this process is also not a violation of the Act. The cashier first asks the customer if he or she is a member of the Reward Zone. (Wallen Decl. ¶ 9.) If the customer answers in the affirmative and does not have his or her membership card, the store will ask for a telephone number or other PII to locate the Reward Zone membership number. (Wallen Decl. ¶ 10.) No reasonable customer who is asked for PII in this situation would perceive the request as a condition for completing the credit card transaction. Rather, a reasonable customer would understand that providing his or her PII is a condition for having the Reward

---

7. Plaintiffs explain to the Court that customers' PII is valuable. Plaintiffs quote FTC Commissioner Pamela Jones Harbour as follows: "Most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency. The larger the data set, the greater potential for analysis—and profit." (Mot. 6.)

Arguably the situation presented in this case is precisely what the California legislature intended. Before the Act, companies could gather PII from their customers for free, by conditioning the completion of a credit card transaction on the customer's provision of PII. After the passage of the Act, a business that wishes to collect PI I from its customers must give the customer some incentive to provide it. Many companies have done what Best Buy has chosen to do-offer to essentially "buy" PII from customers in exchange for coupons and discounts. Many customers will decide this is a worthwhile trade and provide their PII willingly. Other customers will decide to safeguard their PII and refuse the offer.

Zone points associated with the purchase credited to his or her Reward Zone account; but providing the PII is not necessary to completing the credit card transaction. The customer always has the option of declining to provide his PII and not receiving credit on his Reward Zone account for the purchase.

### 3. *Special Purposes Incidental but Related to a Credit Card Transaction*

■ Even if a violation of the Act did not turn on the reasonable customer's perception-in other words, even if Plaintiffs were correct that subsection (a)(2) prohibits **all** requests for PII no matter how obvious it is to the consumer that providing the PII is not a condition of the credit card transaction—the Reward Zone pre-enrollment process and the Reward Zone membership look-up process fall under an exception to the Act. Subsection (c)(4) provides that the prohibition in subsection (a) do not apply "[i]f personal identification information is required for a special purpose incidental but related to the individual credit card transaction, including, but not limited to, information relating to shipping, delivery, servicing, or installation of the purchased merchandise, or for special orders." Cal. Civ.Code § 1747.08(c)(4). Enrolling in a Reward Zone program is a purpose "incidental" to the credit card transaction in the same way that coordinating shipment of goods is incidental to the credit card transaction. Neither process—signing up for the Rewards Zone or having one's purchases shipped—is required to consummate the purchase. The customer could opt to pick up his purchases from the store or the business's warehouse rather than have the items shipped. And the customer could opt to proceed with the credit card transaction without signing up for the Reward Zone. So long as the customer is aware that he is providing his PII for the incidental purpose rather than for the purpose of completing the credit card transaction, requesting PII for the incidental purpose of enrolling a customer on a rewards program is not a violation of the Act.

Similarly, looking up someone's membership in a rewards program is an incidental purpose related to a credit card transaction.

Even a customer who has enrolled in the Reward Zone has the option, when making a subsequent purchase, of choosing to have the cashier look up his Reward Zone membership information or proceeding with the transaction without crediting his Reward Zone account with that day's purchase.

Enrolling in and earning points towards a rewards program are "special purposes incidental but related to" credit card transactions, and are therefore exceptions to the Act's general prohibitions on requesting and recording PII. Cal. Civ.Code § 1747.08(c)(4).

### E. *Overbreadth*

■ The proposed class, as defined by Plaintiffs, might include individuals who have suffered violations of the Act. For instance, customers who provided their PII as part of the hand-keyed transaction verification process may have suffered a violation. But the class and the subclass would also include individuals from whom Best Buy requested PII pursuant to the Reward Zone pre-enrollment procedure or pursuant to the Reward Zone membership look-up process. As the Court has just held, these individuals have not suffered a violation of the Act. Accordingly, the proposed class is overbroad and cannot be certified.

Class certification in this case may yet be proper if an appropriately-defined class is proposed. Plaintiffs have argued that individuals subjected to the hand-keyed transaction verification process described above have suffered a violation of the Act. Defendant does not dispute that this process violates the Act in the briefing on the instant Motion. Without yet deciding the issue, the Court believes there is a potentially-meritorious argument that the hand-keyed transaction verification process violates the Act, and that class certification may be proper to deal with violations made pursuant to that process.

Any viable class, however, would have to be defined to exclude individuals whose PII was gathered pursuant to the Reward Zone pre-enrollment procedure or the Reward Zone membership look-up procedure. It is unclear whether a class so defined would even include the named Plaintiffs, so the Court can-

not conduct the Rule 23(a) analysis necessary to certify a class at this time. Plaintiffs' statements pertaining to their own individual experiences at Best Buy are devoid of specifics. (*See* Decl. of Sean Gass in Supp. of Mot.; Decl. of Jared Wood in Supp. of Mot.; Decl. of Jason Zelis in Supp. of Mot.; Decl. of Versil Milton in Supp. of Mot.) This is unsurprising, given that Plaintiffs' theory was that **any** request for PII violates the Act. But because the named Plaintiffs' explanations to the Court of their own Best Buy transactions do not specify whether they were part of the Reward Zone pre-enrollment process, the Reward Zone membership look-up process, or otherwise,[8] the Court cannot tell if they would remain part of a more narrowly-defined class that excluded those processes.

It is entirely possible that cashiers at Best Buy requested PII from Plaintiffs in a manner that violates the Act. If, however, this occurred because the cashier in question **deviated** from Best Buy's corporate policies and procedures, maintenance of a class action would not be appropriate, and Plaintiffs would need to pursue their claims as individuals. *See Rothman v. Gen. Nutrition Co., Inc.,* Case No. 11–CIV–03617, 2011 WL 6940490, at *5–6 (C.D.Cal. Nov. 17, 2011); *Cortez v. Best Buy Stores, LP,* No. 11–CIV–05053, 2012 WL 255345, at *6–7 (C.D.Cal. Jan. 25, 2012) (holding district-wide class certification not appropriate where the claims were based on oral conversations in which store managers allegedly **deviated** from company policy).[9] If the named Plaintiffs wish to represent a class of individuals who have

suffered violations of the Act, they must at least show that they were themselves subjected to a procedure that violated the Act, and that other class members were subjected to the same procedure. That procedure cannot be the Reward Zone pre-enrollment process or the Reward Zone membership look-up process, because these procedures, as they have been described to the Court, do not violate the Act.

Naturally, this is not a motion for summary judgment, and the Court is not ruling on the continued viability of the named Plaintiffs' claims. The named Plaintiffs are not required at this juncture to prove that they have suffered violations of the Act or risk having their claims adjudicated against them. If Plaintiffs believe they can demonstrate that they suffered violations of the Act pursuant to a corporate policy or widespread custom—either the hand-keyed transaction verification process or some other process that allegedly violates the Act—and that other putative class members suffered the same violation, the Court will permit them to bring another motion for class certification. If Plaintiffs believe they suffered a violation of the Act in a manner that was not pursuant to a corporate policy or widespread custom, they may pursue their claims as individuals.[10]

## III. *RULING*

For the foregoing reasons, Plaintiffs' Motion to Certify Class is **DENIED.** Plaintiffs may file a renewed motion for class certification on or before March 12, 2012. If no motion for class certification is filed by March 12,

---

8. The only exception is the declaration of Plaintiff Jennifer Bennet, who explains that she gave her PII to the cashier at Best Buy as part of the Reward Zone pre-enrollment process. (Decl. of Jennifer Bennet in Supp. of Mot. ¶ 4.)

9. Plaintiffs are free to argue that class certification is proper because Defendant **routinely** deviated from its stated procedures in a way that violated the Act. But for this to support class certification, the manner in which Defendant deviated from its own procedures must be standardized, and the deviation must be supported by competent evidence.

10. As Plaintiffs may opt to bring another motion for class certification, the Court wishes to be explicit on the issues it has **not** reached in the

instant Order. First, Defendant argues that no one can suffer a violation of the Act for a transaction where the customer provides to Best Buy the same PII that the customer had already provided on a previous occasion. (Opp'n 22–23.) Second, Defendant argues that a customer cannot suffer a violation of the Act if he or she uses someone else's credit card for a transaction. (Opp'n 21.) Third, Defendant argues that a customer who is aware of his right to consummate his or her credit card transaction without providing PII cannot suffer a violation of the Act. (Opp'n 22–24.) The instant Order does not decide these issues, and does not comment on whether they would affect a motion for class certification.

2012, Plaintiffs shall proceed as individuals. All dates previously set remain.

IT IS SO ORDERED.