[No. G030590. Fourth Dist., Div. Three. Apr. 30, 2003.]

FLORA FLOREZ et al., Plaintiffs and Appellants, v.
LINENS 'N THINGS, INC., Defendant and Respondent.

**COUNSEL**

Fineman & Associates, Neil B. Fineman; The Anderson Law Firm and Martin W. Anderson for Plaintiffs and Appellants.

Cooley Godward, Michael G. Rhodes and Allison H. Goddard for Defendant and Respondent.

## OPINION

**ARONSON, J.**—Flora Florez, suing on behalf of herself and others, appeals from a judgment of dismissal entered after a demurrer to her complaint against Linens 'N Things, Inc. (LNT), for violations of the Song-Beverly Credit Card Act (Civ. Code, § 1747.8)[1] and unfair business practices was sustained without leave to amend. Because the allegation that the store improperly requests personal identification information from its customers is sufficient to state a viable cause of action, we reverse.

### I

According to the allegations of the second amended complaint, Florez visited an LNT store on July 16, 2001, and brought various items to the cashier for purchase.[2] Pursuant to the store's "Telephone Capture Policy," the cashier asked Florez for her telephone number. Florez obliged, believing it was required to complete the transaction, and the cashier typed the information into the electronic cash register. Producing her credit card, Florez then paid for her purchases.

Many retailers use credit card transaction forms with imprinted spaces for addresses and telephone numbers, leading consumers to believe this information is necessary to complete a purchase. The information acquired by the retailer is then used to create customer records for business purposes, like mailing lists for in-house marketing efforts, or it is sold to direct-mailing specialists. LNT uses computer software that performs a reverse telephone search capable of matching an address to a phone number. Assembling the various pieces of the puzzle, the store created a record containing Florez's name, credit card number, telephone number, and address. The contents of this record can be viewed, printed, distributed, and sold by the store.

### II

At the heart of this dispute is the proper interpretation of section 1747.8. It provides, in relevant part, as follows: "(a) Except as provided in subdivision (c), no person, firm, partnership, association, or corporation which

---

[1] All further statutory references are to the Civil Code unless otherwise noted.

[2] " 'An appellate court's " 'only task in reviewing a ruling on a demurrer is to determine whether the complaint states a cause of action.' " . . .' " (*Gentry v. eBay, Inc.* (2002) 99 Cal.App.4th 816, 824 [121 Cal.Rptr.2d 703].) The superior court's decision is reviewed de novo, and we assume the truth of all facts properly pleaded by the plaintiff.

accepts credit cards for the transaction of business shall do either of the following: [¶] (1) Request, or require as a condition to accepting the credit card as payment in full or in part for goods or services, the cardholder to write any personal identification information upon the credit card transaction form or otherwise. [¶] (2) *Request*, or require as a condition to accepting the credit card as payment in full or in part for goods or services, *the cardholder to provide personal identification information, which the person, firm, partnership, association, or corporation accepting the credit card writes, causes to be written, or otherwise records upon the credit card transaction form or otherwise.*" (Italics added.)

As defined by the statute, " 'personal identification information' " means, "information concerning the cardholder, other than information set forth on the credit card, and including, but not limited to, the cardholder's address and telephone number." (§ 1747.8, subd. (b).)

■ Section 1747.8 is part of the Song-Beverly Credit Card Act, designed to promote consumer protection. The act "imposes fair business practices for the protection of the consumers. 'Such a law is remedial in nature and in the public interest [and] is to be liberally construed to the end of fostering its objectives.' " (*Young v. Bank of America* (1983) 141 Cal.App.3d 108, 114 [190 Cal.Rptr. 122]; see also *Pitney-Bowes, Inc. v. State of California* (1980) 108 Cal.App.3d 307, 324 [166 Cal.Rptr. 489].)[3]

We begin with a brief synopsis of the parties' contentions on appeal. Florez argues section 1747.8, subdivision (a)(2) is violated when a retailer who accepts credit cards either *requests* personal identification information, such as a telephone number, or *requires* such information as a condition of credit card payment. In its original form, the statute only prohibited retailers from requiring and recording a consumer's personal identification information. A 1991 amendment added the word "request" at the beginning of subdivision (a)(2).

LNT responds it may request personal identification information *before* a customer announces his or her preferred method of payment, and no authority prevents a retailer from assembling a database of personal customer information (excluding credit card information), if the customer knowingly and voluntarily supplies it. But if the information is acquired as part of a credit card transaction, the collection and use of such data is prohibited

---

[3]No California court has yet had the occasion to consider the precise meaning of section 1747.8. In *Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429 [97 Cal.Rptr.2d 179, 2 P.3d 27], the California Supreme Court considered certain aspects of class action certification under the statute.

unless the retailer first advises the customer this information is *not* required to complete the purchase.

 The key issue, as the parties see it, is the effect of the 1991 amendment adding the word "request" to the statute. LNT argues the legislative history confirms the phrase "as a condition to accepting the credit card" modifies the word "request." Florez, on the other hand, relies on language in the Enrolled Bill Report of the California Department of Consumer Affairs, Assembly Bill No. 1477 (1991-1992 Reg. Sess.): "This bill would prohibit requesting *or* requiring" personal information "[s]ince the card issuer already has that information, there is no need for the retailer to request it (some retailers request it for mailing list purposes)." Thus, we are told, a retailer's "request" is prohibited even if the customer responds on a voluntary basis.

 We review issues of statutory interpretation under a de novo standard. (*Heavenly Valley v. El Dorado County Bd. of Equalization* (2000) 84 Cal.App.4th 1323, 1334 [101 Cal.Rptr.2d 591].) We look first at the statutory language, and if it is clear and unambiguous, we apply it according to its terms. (*People v. Jones* (1993) 5 Cal.4th 1142, 1146 [22 Cal.Rptr.2d 753, 857 P.2d 1163].) At the same time, we note section 1747.8 is a consumer protection statute, and the retailer's request for personal identification information must be viewed from the customer's standpoint. In other words, the retailer's unannounced subjective intent is irrelevant. What does matter is whether a consumer would *perceive* the store's "request" for information as a "condition" of the use of a credit card.

Viewed from this perspective, we think there is nothing ambiguous or unclear about the statute. By its plain language, it prohibits a "request" for personal identification information in conjunction with the use of a credit card. As the Senate Committee on the Judiciary Analysis of Assembly Bill No. 1477 (1991-1992 Reg. Sess.) explains, section 1747.8 was amended to add the word "request," and "[t]his bill would clarify that persons may neither require *nor request*, as a condition to accepting the credit card, the taking or recording of personal identification information from the cardholder. (Current law states such information may not be required, but does not prohibit *requesting* such information.)"

We note that nothing prevents a retailer from soliciting a consumer's address and telephone number for a store's mailing list, if that information is provided voluntarily. Retailers are not without options in this regard. A merchant can easily delay the request until the customer tenders payment or makes his or her preferred method of payment known. If the payment is

made with cash, and the customer is so inclined, personal identification information can be recorded at that time. Alternatively, retailers could delete a customer's personal identification information as soon as the customer reveals an intention to pay by credit card. In other words, the statutory mandate can hardly be described as draconian. None of these alternatives represents any great imposition on retailers.

On the other hand, a policy of obtaining more information than credit card companies require to complete a transaction creates a conflict with credit card company rules prohibiting a retailer from refusing a sale if a consumer refuses to provide this additional information on a credit card transaction form. Section 1747.8 dovetails with policy by prohibiting the solicitation of information obtained under the false pretense that the transaction cannot or will not be completed without it. Because we think section 1747.8 unambiguously includes a request for personal identification information, we conclude the trial court erred in sustaining the demurrer to this cause of action.

Legislative history further supports our conclusion. ■ As we pursue that task, we keep the following admonition in mind: "It is a well-established canon of statutory construction that a court should go beyond the literal language of the statute if reliance on that language would defeat the plain purpose of the statute . . . ." (*Bob Jones University v. United States* (1983) 461 U.S. 574, 586 [103 S.Ct. 2017, 2025, 76 L.Ed.2d 157].)

Our inquiry begins with the California Assembly Committee on Finance and Insurance, Background Information Request on Assembly Bill No. 2920 (1989-1990 Reg. Sess.): "AB 2920 seeks to protect the personal privacy of consumers who use credit cards to purchase goods or services by prohibiting retailers from requiring consumers to provide addresses, telephone numbers and other personal information that is *unnecessary to complete the transaction and that the retailer does not need.*" (Italics added.) In essence, the original enactment (Stats. 1990, ch. 999, § 1, pp. 4191-4192 [Assem. Bill No. 2920]) was a response to two principal privacy concerns. "[F]irst, that with increased use of computer technology, very specific and personal information about a consumer's spending habits was being made available to anyone willing to pay for it; and second, that acts of harassment and violence were being committed by store clerks who obtained customers' phone numbers and addresses."[4]

■ LNT insists its employees did nothing to suggest the provision of a telephone number was a requirement or condition of payment by credit card.

---

[4]At oral argument, counsel for LNT could not explain how the retailer's interpretation of the statute addressed either one of these concerns.

Because there was no discernible link between the request and the use of the credit card, LNT claims section 1747.8 does not apply here. As LNT interprets it, section 1747.8 allows a retailer to request consumer telephone numbers *before* the manner of payment is known because the timing of the request eliminates any concern that the provision of such information is a condition of credit card payment.

The argument is not persuasive. As evidenced by the 1991 amendment, section 1747.8 is designed to prevent a "request" for personal information, because a customer might perceive that request as a condition of credit card payment. In effect, the 1991 amendment prevents a retailer from making an end-run around the law by claiming the customer furnished personal identification data "voluntarily." In fact, the Enrolled Bill Report of the California Department of Consumer Affairs, Assembly Bill No. 1477 (1991-1992 Reg. Sess.), specifically addressed this problem, noting "[t]his bill would prohibit requesting *or* requiring that information." As we read it, the legislative intent suggests the 1991 amendment simply clarified that a "request" for personal identification information was prohibited if it immediately preceded the credit card transaction, even if the consumer's response was voluntary and made only for marketing purposes.

The obvious purpose of the 1991 amendment was to prevent retailers from "requesting" personal identification information and then matching it with the consumer's credit card number. LNT's interpretation leads to an absurd conclusion, i.e., the retailer may evade the statutory prohibition by rushing to obtain the information before the customer makes his or her payment preference known. That interpretation, if allowed, would completely undermine the purpose of the statute.[5]

Based on our review, we conclude the addition of the word "request" to section 1747.8 bars a preliminary request for personal identification information. Accordingly, the allegations in Florez's second amended complaint were sufficient to state a cause of action for a violation of section 1747.8, and we reverse the judgment of dismissal.

### III

The second cause of action, for violations of Business and Professions Code section 17200, is itself premised on a violation of section 1747.8.

---

[5]We note the *Legislative Counsel's Digest of the 1991 amendment specifically states that* "[t]his bill would provide that the merchant in such a transaction may neither request personal identification information, nor require that information as a condition to acceptance of the card . . . ." (Legis. Counsel's Dig., Assem. Bill No. 1477 (1991-1992 Reg. Sess.) p. 1.)

Raising what is in effect a "house of cards" argument, LNT claims Florez's Business and Professions Code section 17200 claim must fail because she cannot state a viable cause of action under section 1747.8. Given our conclusion that Florez has pleaded a valid claim under section 1747.8, we think the opposite is true.

The judgment is reversed with directions to overrule the demurrer to Florez's second amended complaint. Florez shall recover her costs on appeal.

Bedsworth, Acting P. J., and Moore, J., concurred.

Respondent's petition for review by the Supreme Court was denied July 30, 2003. George, C. J., and Brown, J., did not participate therein.