Filed 7/20/15 Adjamian v. L'Oreal

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ALLEN ADJAMIAN, | B257403 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC504368) |
| v. | |
| L 'OREAL USA S/D, INC., | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Elihu M. Berle, Judge. Affirmed.

Wucetich & Korovilas, Jason M. Wucetich and Dimitrios V. Korovilas for Plaintiff and Appellant.

Paul Hastings, Dennis S. Ellis, Katherine F. Murray and Nicholas J. Begakis for Defendant and Respondent.

Allen Adjamian, on behalf of himself and others similarly situated, filed a class action complaint against L'Oreal USA S/D, Inc., owner and operator of Kiehl's Since 1851 retail stores.[1]  Adjamian alleges Kiehl's store employees requested personal identification information (PII) from customers in connection with credit card transactions in violation of the Song–Beverly Credit Card Act of 1971 (Civ. Code, § 1747 et seq.) (the Act).  Adjamian appeals the denial of his motion for class certification.

Adjamian contends (1) the trial court erroneously construed Civil Code section 1747.08, subdivision (a)(2) and denied class certification based on its erroneous construction of the statute, and (2) he presented sufficient evidence of a policy or practice by Kiehl's of violating the statute.  We conclude Adjamian has shown no prejudicial error.  The trial court properly construed the statute.  Substantial evidence supports the court's finding, by a preponderance of the evidence, that individual issues will predominate on the question of liability.  We therefore affirm the denial of class certification.

## FACTUAL AND PROCEDURAL BACKGROUND

1.    *Adjamian's Allegations*

Adjamian sued L'Oreal in March 2013.  He filed a first amended complaint in August 2013 and a second amended complaint in September 2013.  Adjamian alleged he bought merchandise from a Kiehl's store in Canoga Park in February 2013 using a credit card.  Adjamian alleged that, during the transaction, the sales clerk asked for his home address, telephone number, and e-mail address.  He provided the requested information.  Adjamian alleged he "believes that information was recorded by" the sales clerk.  When the clerk gave Adjamian his receipt, "some of the [PII] requested and recorded by [the Kiehl's'] employee was printed on the receipt."

Adjamian alleged Kiehl's "engages in a pattern and practice of knowingly requesting and recording [PII] of its customers at all its retail stores in California during

---

[1]    We refer to the defendant interchangeably as Kiehl's and L'Oreal throughout this opinion.

credit card transactions, including their addresses, e-mail addresses and/or phone numbers . . . . " Adjamian alleged Kiehl's uses the PII "for unlawful purposes with the objective of increasing sales from repeat customers and to generate additional revenue for the company." Adjamian also alleged Kiehl's "shares or sells the [PII] it collects from consumers to third parties."

Adjamian alleged a single count for violation of Civil Code section 1747.08, subdivision (a). He sought civil penalties for each violation under Civil Code section 1747.08, subdivision (e), declaratory and injunctive relief, and attorney fees.

2.      *The Motion for Class Certification*

a.      *Adjamian's Moving Papers*

In January 2014 Adjamian moved for class certification. He sought to certify a class of "[a]ll California citizens who purchased merchandise with a credit card at [a] Kiehl's Since 1851 store operated by [L'Oreal] in California, from March 29, 2012, to the present, who were requested to and did provide personal identification information, including but not limited to their physical address, e-mail address, telephone number, and/or zip code, which was then recorded by [Kiehl's] during or in conjunction with the credit card transaction, other than exclusively for shipping, delivery, servicing, installation, or special order purposes." Adjamian also sought to certify a subclass limited to purchases between March 29, 2012, and August 31, 2013,[2] but otherwise the same as the larger class.

Adjamian contended that Kiehl's had a common "policy and practice of unlawfully recording customers' [PII] during credit card transactions, in violation of [Civil Code] § 1747.08(a)" and that class certification was appropriate. Adjamian filed his own declaration and declarations by his counsel, attaching documents L'Oreal had produced in discovery. In his declaration, Adjamian expanded on the factual allegations

---

[2]      In the spring of 2013 Kiehl's changed its point-of-sale software. (Adjamian believed -- apparently erroneously -- that this software change happened in September 2013.) In September 2013 Kiehl's instituted a rewards program. Adjamian contends these changes did not render Kiehl's' practices legal but he proposed a subclass in an abundance of caution.

3

of his complaint. Adjamian stated the Kiehl's sales clerk "recorded some or all of the [PII] I provided by typing it into the electronic cash register system." Adjamian continued, "The sales clerk then completed the sale, and provided me with a credit card transaction receipt that, in addition to printing my credit card sale information, also printed some of my [PII] that had been collected, including my name, phone number, and e-mail address." Adjamian attached a copy of the receipt as an exhibit. The receipt says "STORE RECEIPT COPY." It seems to bear no signature. At the bottom of the receipt Adjamian's name, home telephone number, and e-mail address appear. In his declaration, Adjamian stated the sales clerk never told him why his PII was being collected or how it would be used. He said the clerk never told him "that providing my [PII] was optional or to be done on a voluntary basis only." Adjamian stated, "It seemed to me as though providing my personal information to the sales clerk was required and mandatory to the transaction because the clerk requested and recorded the information at the cash register while the transaction was pending, prior to providing me my receipt."

Adjamian's attorney submitted excerpts from Kiehl's' employee manuals and training documents. One manual stated, "We attempt to create an ongoing relationship by capturing every customer's information in MARS."[3] A training document states, "Remember to link every sale to an EXISTING customer or to enter information for a NEW customer (both email and mailing address)." Kiehl's' training materials also emphasize the importance of asking for and recording customers' personal contact information.

In support of his motion for class certification, Adjamian also requested judicial notice of legislative history materials and orders by trial courts in other cases.

b.     *L'Oreal's Opposition to the Class Certification Motion*

L'Oreal argued in opposition to the motion that Civil Code section 1747.08, subdivision (a)(2) prohibits requesting or requiring PII only in a manner that the

---

**3**     MARS is the point-of-sale software Kiehl's began using in the spring of 2013.

customer reasonably would perceive as imposing a condition on accepting a credit card payment. It asserted there was no evidence Kiehl's had such a policy, so there was no substantial evidence that common issues predominated. L'Oreal submitted declarations from Kiehl's' director of retail operations, Anthony De Paola, and the assistant manager of the Canoga Park store, Marina Hovhannisyan.

De Paola stated Kiehl's has had a mailing list since 2006 called "Kiehl's Family": customers can sign up to get information about products, special offers, and store events. In September 2013 Kiehl's began a rewards program: customers who join can get discounts and free products. Kiehl's also has a recycling program: customers who choose to participate provide their names and a mailing or e-mail address so Kiehl's can track their participation. Until the spring of 2013 Kiehl's used point-of-sale software called CRS Retail Store Express. When a customer approached the register, the sales clerk asked if the customer was a member of Kiehl's Family. If so, the clerk looked up the customer by name. If not, "the consumer could voluntarily provide information to become a member." If the customer then paid by credit card, the CRS system printed two receipts: one marked "store receipt" for the customer to sign and return to the clerk, and a second for the customer to keep. The store receipt reflected the customer's contact information if the customer already had provided it to join Kiehl's Family, on that day or on a prior occasion. The receipt given to the customer displayed no customer information. Once Kiehl's began using the MARS software, neither the store receipt nor the customer receipt listed any customer information.

De Paola stated in his declaration that the receipt Adjamian attached to his declaration was "unusual." The receipt says "store receipt"; Adjamian should have signed it and returned it to the clerk. After Adjamian filed his declaration in this case, Kiehl's searched its records and could not find any original store receipt signed by Adjamian for his purchase in February 2013.

De Paola explained that Kiehl's contracts with another company, Harte-Hanks Data Technologies, to maintain and store its customer information and to send mail to customers. Harte-Hanks does not sell or share Kiehl's information with anyone.

5

Harte-Hanks' database does not identify which Kiehl's customers paid by credit card. There is no way to tell from the database whether a customer whose name and address appeared on the store's copy of a receipt provided that information on the day he or she shopped at Kiehl's or on an earlier date.

Hovhannisyan stated in her declaration that she has worked for Kiehl's since 2008, first as a sales clerk and then -- as of September 2012 -- as an assistant store manager. From September 2012 to July 2013, Hovhannisyan worked under manager Marissa Cabanilla at the Canoga Park store. Between July 2013 and December 2013 Hovhannisyan essentially was the manager for that store because there was no manager. Hovhannisyan watched Cabanilla train new employees and Hovhannisyan then trained new employees the same way. The receipt Adjamian attached to his declaration lists "Morales" as the sales clerk. Cabanilla or Hovhannisyan, or both of them, trained Morales.

Kiehl's sales clerks are trained "to welcome the customers as they enter the store and to engage them as soon as possible about their needs and any questions they might have." Clerks "offer each customer a seated consultation" and "appropriate samples." Kiehl's trains its clerks "to open relationships with customers to allow them to follow up regarding customer satisfaction, product use experience and ongoing skincare needs." Clerks are trained "to obtain the customers' contact information, if customers are willing to provide it, as soon as possible during the customer's visit to Kiehl's." Hovhannisyan encourages her clerks "to inquire as to whether a customer is a member of Kiehl's [F]amily during their initial contact with the customer when they are welcoming the customer into the store." If the customer has not already given Kiehl's his or her contact information, clerks are to ask the customer if he or she is willing to provide that information "for follow up." According to Hovhannisyan, "[t]his often happens during the seated skin consultation . . . long before the customer decides to make a purchase." Hovhannisyan always tells her clerks "that they need to express to customers that providing personal information is optional and that they should always provide a reason as to why Kiehl's is requesting the information." Kiehl's'

6

point-of-sale software "has nothing to do with [her] suggestion to [sales clerks] to request customer contact information as early as possible during the customer's visit to Kiehl's."

Hovhannisyan stated in her declaration that Adjamian's "description of his shopping experience" at the Canoga Park Kiehl's store and "the treatment [he] says he received during his visit" was "highly unusual." Adjamian's statement that he was asked for his personal information at the cash register when he presented his items for purchase "would be exactly contrary to the way [clerks] at the Kiehl's Canoga Park store are trained." Hovhannisyan stated Adjamian should have been offered a skin consultation and product samples, and when he reached the counter to pay for the items he should have been asked if he was a member of Kiehl's Family. If he said no, the clerk "would have been trained to ask [him] if he wished to become a member," and if he said yes the clerk "would then ask how [he] wished to be contacted." Hovhannisyan stated, "What Mr. Adjamian describes in his Declaration is in my mind is not something we would do at the Kiehl's Canoga Park store." Hovhannisyan added, "[Sales clerks] always ask for permission when requesting a customer's contact information." Finally, Hovhannisyan noted the receipt Adjamian attached to his declaration was the store's copy for the customer to sign and the store to keep, "not a receipt that is normally provided to Kiehl's customers."

In support of its opposition to the class certification motion, L'Oreal also submitted excerpts of Adjamian's testimony at his deposition in March 2014. Contrary to his statement in his declaration dated January 31, 2014, that "it seemed to [him] as though providing [his] personal information to the sales clerk was required and mandatory to the transaction," Adjamian testified at his deposition that he did not feel that way.[4] L'Oreal also asked Adjamian in his deposition about his earlier lawsuits

---

[4] When asked "Did you feel that if you didn't give them the information for their database, you would not be able to purchase the items?" Adjamian replied "I don't recall feeling that way." When asked "Do you remember thinking if I don't give this information, I can't use my credit card to pay?" Adjamian answered, "I don't recall such

7

against two other retailers for violations of the Song-Beverly Credit Card Act (in which the same counsel represented him). L'Oreal's attorney asked Adjamian whether -- in light of those lawsuits -- he knew when he shopped at Kiehl's that he did not have to provide any personal information to use his credit card. Adjamian first answered that he "might have been" familiar with the law. Then he testified that he "believe[d] [he] had [the] knowledge" that the statute prohibits retailers from asking for PII "in connection with a credit card transaction." Two transcript pages later, however, Adjamian testified that when he went up to the Kiehl's counter, he had forgotten what the law prohibited.

Adjamian testified at his deposition that he has never spoken with anyone else who shopped at Kiehl's and that he does not know of anyone else who claims Kiehl's violated the Act.

In its opposition papers, L'Oreal argued that whether a violation occurred depended on whether the individual consumer reasonably believed that providing his or her personal information was a condition of using a credit card and that individual issues of liability therefore predominated. It contended Adjamian also failed to satisfy the other requirements for class certification.

3. *The Hearing*

On May 2, 2014, the trial court heard argument on the motion for class certification. Adjamian's counsel argued that the phrase in the Act "as a condition to accepting [a] credit card as payment" applies only to a retailer's "requir[ing]" of PII, not to its "request" for PII. In other words, counsel contended the "as a condition" limiting language applies to a retailer who "requires" PII but not to one who only "requests" PII. Counsel argued the statute "prohibits a requesting and record of [PII] during or in conjunction with" or "during" "the use of a credit card." Therefore, counsel argued, the

---

a thinking like that." When asked "So do you recall feeling that if you didn't provide your information you wouldn't be able to go forward with your transaction?" Adjamian responded, "I don't recall feeling that." Again Adjamian was asked, "At the time that you were making your purchase and your request for information was requested of you, did you believe that if you did not provide the information you would not be able to make your purchase?" He answered "I don't recall believing that."

8

Act prohibits a retailer from asking a customer who pays with a credit card for PII at any point "until after the transaction is over and [the retailer has] hand[ed] over the receipt." The trial court asked if Adjamian contended a retailer may not even ask a customer who approaches the register "would you like to join our reward club?" and if it must "wait until the transaction is complete and the customer has the receipt in hand and the customer wants to leave and the store cashier should say 'Wait, Wait, Wait, Don't leave yet, I want to talk to you? ' " Adjamian's counsel said yes: that is what the statute requires. Counsel suggested retailers may set up a kiosk, for example, by the entrance to the store, away from the cash register, to handle loyalty and rewards programs.

L'Oreal's counsel argued that it did not "matter which way the court . . . interpret[ed] the statute." In any event, counsel contended, the court should deny class certification "because of the way Kiehl's does business." Counsel asserted Kiehl's asks customers for PII when it gives them a product sample or when the customer wants to join Kiehl's Family. Counsel said Kiehl's "relies on personalized interactions with its customers," offering them skin consultations, samples, free products, and recycling. "All of those situations," counsel argued, "provide opportunities for a Kiehl's employee to ask for [a] customer's information that has absolutely nothing to do with a credit card transaction. Doesn't even happen at the cash register area." Counsel argued the evidence before the court did not show any policy or practice by Kiehl's of asking "everyone that shows up to the counter" for PII.

4.      *The Trial Court's Ruling*

After hearing from counsel, the trial court delivered its ruling in some detail. On June 3, 2014, the court filed a signed order embodying that ruling. The court first discussed the statute's language and cases interpreting it, in particular *Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524 (*Pineda*) and *Florez v. Linens 'N Things, Inc.* (2003) 108 Cal.App.4th 447 (*Florez*). The order stated, "The crux of Plaintiff's argument in support of his Motion for Class Certification turns on the interpretation of the statute." The court rejected Adjamian's argument that Civil Code

9

section 1747.08, subdivision (a) prohibits requesting PII in connection with a credit card transaction even if providing that information was not a condition of accepting a credit card payment. Citing *Florez,* the court stated a request for PII violates the statute only if "a consumer would perceive the store's request for information as a condition for the use of the credit card." Thus, the court concluded the statute prohibits a retailer from requiring a credit card holder to provide PII in connection with a credit card transaction and from requesting that information in a way that would cause a reasonable consumer to believe that providing the information is a condition of accepting a credit card payment.

The trial court found that individual issues predominate on the question of liability because Adjamian failed to present substantial evidence of a policy or practice by Kiehl's specific to credit card transactions of requiring PII or causing a reasonable customer to perceive such a requirement. The court stated, "According to Defendant, customer information was not requested as a matter of routine during credit card transactions, but it could be requested under varying circumstances, including by entering the store, when paying for merchandise with cash, or when signing up online. Whether L'Oréal USA violated the Song–Beverly Credit Card Act would therefore depend on the circumstances surrounding a request for information because, as set forth above, that involves whether the customer believed that providing his or her information was a condition of consummating the credit card transaction. Such a question would turn on the particular facts of each customer's transaction, and is not subject to common proof." The court noted Adjamian "has presented no evidence of any Kiehl's transaction other than his own, and his deposition testimony shows that he did not recall thinking he had to provide his personal information in order to use his credit card to pay."

The trial court also found Adjamian failed to show that common issues predominate on liability even under Adjamian's construction of the statute. Adjamian presented no evidence, the court said, of a uniform policy or practice of requesting PII "in connection with credit card transactions." The order stated the evidence "fails to

10

show any policy about credit card transactions, whether information is required or simply requested." The order continued, "There is simply nothing before the Court to suggest that Defendant had a standard policy throughout its California Kiehl's stores requiring or requesting personal information as a condition of or at least in connection with credit card transactions. Individualized issues will, therefore, predominate on the question of liability under the Song–Beverly Credit Card Act."[5]

The trial court also found Adjamian's transaction "was not typical of other members of the putative class" and, "as Plaintiff is not typical, he is also not an adequate representative." The order stated it was not necessary to decide whether the putative class was sufficiently ascertainable and numerous.

5. *Appeal*

Adjamian timely appealed the order denying class certification.[6]

## *CONTENTIONS*

Adjamian contends the trial court misconstrued Civil Code section 1747.08, subdivision (a)(2), and its findings that common issues do not predominate and that Adjamian failed to satisfy the typicality and adequacy requirements were based on that erroneous construction. According to Adjamian, he need prove only that Kiehl's requested and recorded PII from a customer who paid by credit card in order to establish a violation of the statute, and he need not prove that providing that information was actually or was perceived to be a condition of accepting a credit card payment.

---

[5] The order also stated, "if requesting [PII] during or in connection with a credit card transaction *ipso facto* gives rise to liability under the Song–Beverly Credit Card Act, then the putative class members' claims probably could be evaluated in one stroke as Plaintiff asserts." But, again, the court noted there was no evidence of a standard policy of requesting PII in connection with credit card transactions and so individual issues predominate.

[6] An order denying class certification is appealable under the "death knell" doctrine if it effectively terminates the class claims while allowing individual claims to proceed. (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 757-759.)

11

Adjamian also contends he presented sufficient evidence of a policy or practice by Kiehl's of requesting PII in connection with credit card transactions.

## *DISCUSSION*

### 1. *Class Certification Principles*

"Code of Civil Procedure section 382 authorizes class actions 'when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . . ' The party seeking certification has the burden to establish the existence of both an ascertainable class and a well-defined community of interest among class members. [Citations.]" (*Sav–On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326 (*Sav–On*).) "[T]he 'community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class.' [Citation.]." (*Fireside Bank v. Superior Court* (2007) 40 Cal.4th 1069, 1089 (*Fireside Bank*).) "In certifying a class action, the court must also conclude that litigation of individual issues, including those arising from affirmative defenses, can be managed fairly and efficiently." (*Duran v. U.S. Bank National Assn.* (2014) 59 Cal.4th 1, 28-29.)

"The 'ultimate question' the element of predominance presents is whether 'the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.' [Citations.] The answer hinges on 'whether the theory of recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment.' " (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1021 (*Brinker*).) Thus, "[p]resented with a class certification motion, a trial court must examine the plaintiff's theory of recovery, assess the nature of the legal and factual disputes likely to be presented, and decide whether individual or common issues predominate." (*Id*. at p. 1025.)

2. *Standard of Review*

We review an order granting or denying class certification for abuse of discretion. (*Sav–On*, *supra*, 34 Cal.4th at pp. 326–327.) As " 'trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification.' " (*Id.* at p. 326; see also *Fireside Bank, supra,* 40 Cal.4th at p. 1089 [a decision to certify or not to certify a class "rests squarely within the discretion of the trial court, and we afford that decision great deference on appeal, reversing only for a manifest abuse of discretion"].) Accordingly, such a ruling generally will not be disturbed unless it is (1) not supported by substantial evidence, (2) based on improper criteria, or (3) based on erroneous legal assumptions. (*Fireside Bank, supra,* 40 Cal.4th at p. 1089.) "Predominance is a factual question; accordingly, the trial court's finding that common issues predominate generally is reviewed for substantial evidence. [Citation.] We must '[p]resum[e] in favor of the . . . order . . . the existence of every fact the trial court could reasonably deduce from the record . . . . ' [Citation.]" (*Brinker*, *supra*, 53 Cal.4th at p. 1022.)

3. *Substantial Evidence Supports the Trial Court's Predominance Finding*

The trial court determined the proposed class lacked the requisite community of interest because Adjamian failed to establish predominant common questions of fact. Adjamian contends the trial court's findings were based on its erroneous construction of Civil Code section 1747.08, subdivision (a)(2). Adjamian argues the Act prohibits any and all *requests* for PII of any customer who ends up paying with a credit card before the transaction is completed, regardless of the circumstances in which the request is made. That Kiehl's' sales clerks request some customers' PII before the customer presents a credit card for payment, or even before the customer suggests he or she intends to purchase merchandise, does not change the analysis in Adjamian's view.

"In 1990, the Legislature enacted former [Civil Code] section 1747.8[7] (Assem. Bill No. 2920 (1989-1990 Reg. Sess.) § 1), seeking 'to address the misuse of personal identification information for, inter alia, marketing purposes, and [finding] that there would be no legitimate need to obtain such information from credit card customers if it was not necessary to the completion of the credit card transaction." (*Pineda, supra,* 51 Cal.4th at p. 534, quoting *Absher v. AutoZone, Inc.* (2008) 164 Cal.App.4th 332, 345 (*Absher*).) "To protect consumers, the Legislature sought to prohibit businesses from 'requiring information that merchants, banks or credit card companies do not require or need.' [Citation.]" (*Id.* at p. 535.) A year later, in 1991, the Legislature amended the statute, broadening the provision to forbid businesses from " '*[r]equest[ing], or* requir[ing] as a condition to accepting the credit card . . . , the cardholder to provide personal identification information . . . . ' [Citation.]" (*Ibid.*)

California courts have rejected Adjamian's contention that the statute "imposes an absolute prohibition on requesting [PII] from credit card customers." (*Harrold v. Levi Strauss & Co.* (2015) 236 Cal.App.4th 1259, 1265 (*Harrold*).) As the *Harrold* court noted, "the very purpose of adding 'request' to the statute was to apply the prohibition against conditioning the acceptance of a customer's credit card to a request as well as to a requirement." (*Id.* at p. 1266.) "The ['as a condition'] clause clearly was intended to apply to both a request and a requirement." (*Ibid.*; see also *Absher, supra,* 164 Cal.App.4th at p. 344 [noting "the punctuation in [section 1747.08,] subdivision (a)(1) and (a)(2) is not punctilious" but rejecting the plaintiff's argument there "that the qualifying phrase 'as a condition to accepting the credit card as payment' applies only to 'require,' not to 'request' "].)

As the *Harrold* court observed, "[s]everal courts, both state and federal, have recognized that the Act does not preclude merchants from operating e-mail marketing programs and requesting consumers to voluntarily provide their e-mail addresses or other identification information for use in such programs." (*Harrold, supra,*

---

[7] The statute was later amended and renumbered as section 1747.08. (Stats. 2004, ch. 183, § 29.)

236 Cal.App.4th at p. 1267.) "In *Florez*, the Court of Appeal expressly noted 'that nothing prevents a retailer from soliciting a consumer's address and telephone number for a store's mailing list, if that information is provided voluntarily.' " (*Ibid*.) "In *Gass v. Best Buy Co., Inc.* (C.D. Cal. 2012) 279 F.R.D. 561, the district court embraced that view, noting that if the phrase ' "as a condition to accepting the credit card" ' does not apply to the word 'request,' ' "then nothing ties a violation of the Act to a credit card transaction at all. . . . [¶] . . . [¶] Such a construction would mean that no business in California that accepts credit cards as payment can maintain a mailing list." ' " (*Harrold, supra,* 236 Cal.App.4th at p. 1267.)

As the trial court here noted, *Florez* stated "[w]hat . . . matter[s] is whether a consumer would *perceive* the store's 'request' for information as a 'condition' of the use of a credit card." (*Florez, supra,* 108 Cal.App.4th at p. 451 [emphasis in original].) The trial court found that -- while Kiehl's unquestionably has a policy and practice of trying to get customers' contact information by signing them up for its loyalty and rewards programs -- "[t]he evidence does not show a routine course of conduct of asking for customers' [PII] during a [credit card] transaction." Thus, the court concluded, whether L'Oreal violated the Act "would therefore depend on the circumstances surrounding a request for information because . . . that involves whether the customer believed that providing his or her information was a condition of consummating the credit card transaction." So, the court said, "[s]uch a question would turn on the particular facts of each customer's transaction, and is not subject to common proof."

Substantial evidence supports the trial court's findings. Kiehl's' documents show -- and its assistant store manager readily admits -- that Kiehl's trains its sales clerks to ask customers for their contact information. These efforts begin when the customer walks into the store and last until the customer leaves. Customers are asked for their contact information when the clerk first greets them upon arrival, when they sit down for a skin consultation, and when they are given product samples. Customers are asked if they are members of the retailer's loyalty club, Kiehl's Family; if not, if they

15

would like to join; if they would like to enroll in the rewards program; and if they would like to participate in Kiehl's' recycling program. The clear implication from the evidence before the trial court is that Kiehl's seeks to get contact information from customers at various times, and through various efforts, before the customer ever presents a credit card for payment. Indeed, the evidence supports a reasonable inference that Kiehl's, in at least some instances, requests PII even before the customer has any thought of purchasing merchandise with a credit card at all.

Because a retailer is liable for a violation of section 1747.08, subdivision (a)(2) only if "a consumer would *perceive* the store's 'request' for information as a 'condition' of the use of a credit card" (*Florez, supra,* 108 Cal.App.4th at p. 451), the varied circumstances in which Kiehl's requests PII from its customers present individualized factual issues that cannot be jointly tried in a class action. (See *Brinker, supra,* 53 Cal.4th at p. 1021.) Though a jury might conclude that a customer would perceive a request for PII to be a condition of the use of a credit card were the request made after the customer presented the card for payment, the same jury could reasonably conclude that no customer would perceive the request to be a condition for paying with a credit card if the evidence showed Kiehl's' clerk made the request immediately upon greeting the customer when he or she entered the store. In view of the evidence presented to the trial court, the circumstances of each customer interaction must be evaluated to determine what a reasonable customer would have perceived about the request for PII vis-à-vis the subsequent credit card transaction and, hence, whether the request constituted a violation of the Act. The trial court reasonably concluded individualized issues would predominate based on this evidence.

Evidence that Kiehl's' computers allow sales clerks to record customer contact information does not, standing alone, establish a violation of the Act. A retailer is not required to have two separate computer systems -- one to process payments and one to input and maintain contact information for customers who join loyalty or rewards programs -- to avoid violating the Act. Adjamian makes much of the fact that his name, telephone number, and email address were printed on the store receipt he attaches to his

16

declaration.[8] But this evidence establishes only that Kiehl's records PII; it does not establish that the store maintains a uniform policy that can be evaluated to assess *on a class-wide basis* whether every customer whose PII was requested would "*perceive* the store's 'request' for information as a 'condition' of the use of a credit card." (*Florez, supra,* 108 Cal.App.4th at p. 451.) Adjamian's evidence concerning Kiehl's' practice of recording PII tells only half the story. That evidence did not compel the trial court to conclude a violation could be established on a class-wide basis, given the evidence Kiehl's presented concerning the varied circumstances in which it requests PII from its customers.

In sum, substantial evidence supports the trial court's finding that common issues do not predominate. The court did not abuse its considerable discretion in denying class certification. In light of our conclusion, we need not decide whether the trial court properly found that Adjamian failed to satisfy the typicality and adequacy requirements. (See *Hataishi v. First American Home Buyers Protection Corp.* (2014) 223 Cal.App.4th 1454, 1469.)

---

[8] As De Paola explained in his declaration, the customer name and contact information appeared on the store's copy of the receipt when Kiehl's used the CRS system "if it had already been provided in connection with the consumer's election to join the Kiehl's Family."

*DISPOSITION*

The order is affirmed. L'Oreal is entitled to recover its costs on appeal.

***NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS***


EGERTON, J.[*]

WE CONCUR:



EDMON, P. J.



ALDRICH, J.

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.